UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE BUCKLO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 07 CR 795 |
| | ) | |
| v. | ) | Violations: Title 18, United |
| | ) | States Code, Sections 2, 513(a), |
| ROBERT FLETCHER and | ) | and 1343 |
| MICHAEL COURTNEY | ) | |

**MAGISTRATE JUDGE NOLAN**

## COUNT ONE

The SPECIAL JUNE 2007 GRAND JURY charges:

1.    At times material to this indictment:

a.    JP Morgan Chase ("Chase Bank") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

b.    World Savings Bank, located in San Antonio, Texas, was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

c.    Equity Mortgage Corporation, located in Lombard, Illinois, was a state licensed residential mortgage lender.

d.    World Savings Bank and Equity Mortgage Corporation relied upon mortgage loan applications to determine whether to finance the purchase of real estate by the applicant. The information the applicant was required to supply included the purchase price of the property, any down payment made and the applicant's assets, employment, income, and intention to occupy the real property, and the source of the funds for any down payment. These lenders also had guidelines concerning the relationship between the value of the property and the amount of the any loan secured by that property.

1

e.       Defendant MICHAEL COURTNEY was the owner and president of Madava Inc., a corporation engaged in the development and construction of residential real estate projects in the Chicago area, which owned "University Townes", a five-unit condominium building located at 6458 South Greenwood Avenue, Chicago, Illinois.

2.       Beginning in or about June 2007, and continuing to in or about December 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT FLETCHER and
MICHAEL COURTNEY,

defendants herein, along with others known and unknown to the Grand Jury, knowingly devised and participated in a scheme to defraud World Savings Bank and Equity Mortgage Corporation and to obtain money and funds owned by and under the custody and control of those lenders, by means of materially false and fraudulent pretenses, representations, promises and omissions, which scheme is further described in the following paragraphs.

3.       It was part of the scheme that, at some point in approximately 2007, FLETCHER and COURTNEY agreed that FLETCHER would purchase "Unit B" and "Unit C" in University Townes from Madava.

4.       It was further part of the scheme that FLETCHER and COURTNEY agreed that the real estate sales contract would falsely reflect the full listed selling price for Units B and C as approximately $390,000 each, but that COURTNEY would, instead, sell Unit B to Individual A, a person associated with FLETCHER, and Unit C to FLETCHER for the actual price of approximately $315,000 each.

5.       It was further part of the scheme that, in order to facilitate Individual A's acquisition

2

of financing for the purchase of Unit B, COURTNEY directed another individual to prepare and to transmit to FLETCHER two letters of deposit, one dated June 29, 2007 and the other dated July 30, 2007, which purported to confirm that Madava Inc., through COURTNEY, had received two checks, each in the amount of $39,000, and totaling $78,000, for the purchase of Unit B when, as COURTNEY and FLETCHER well knew, FLETCHER did not pay and COURTNEY did not receive any actual down payment or earnest money for the purchase of Unit B.

6.   It was further part of the scheme that FLETCHER transferred or caused to be transferred to COURTNEY photocopies of two checks purportedly drawn on Chase Bank, one dated June 29, 2007 and the other dated July 30, 2007, each in the amount of $39,000, which purported to represent the down payment or earnest money from Individual A for the purchase of Unit B in University Townes when, as FLETCHER well knew, the two checks depicted in the photocopies had not been validly issued by Chase Bank.

7.   It was further part of the scheme that on or about September 5, 2007, FLETCHER sent or caused to be sent by facsimile transmission to COURTNEY a signed real estate sales contract for the purchase of Unit B which, as FLETCHER and COURTNEY well knew, falsely represented that Individual A had deposited $39,000 with Madava Inc. and that Individual A intended to deposit an additional $39,000 with Madava Inc.

8.   It was further part of the scheme that FLETCHER caused a loan application to be submitted to World Savings Bank in order to induce World Savings Bank to approve a mortgage loan in the amount of approximately $312,967.40 for Individual A's purchase of Unit B. The loan application, as FLETCHER well knew, falsely represented that, among other things, there had been a $78,000 down payment made toward the purchase price of Unit B.

3

9.     It was further part of the scheme that FLETCHER caused to be submitted to World Savings Bank a uniform residential loan application for the purchase of Unit B that misrepresented Individual A's income from Employer A, namely that Individual A earned $84,000 per year, when in fact Individual A was not employed there in 2007.

10.    It was further part of the scheme that on or about October 26, 2007, Individual A appeared at a closing to purchase Unit B from Madava Inc. The Department of Housing and Urban Development settlement statements associated with the purchase falsely represented that Individual A had deposited a down payment with Madava Inc. when, as FLETCHER and COURTNEY well knew, the two $39,000 checks had not been deposited and COURTNEY had not received any earnest money or down payment for the purchase of Unit B. The closing documents also falsely represented the purchase price of Unit B to be approximately $390,000 when, as FLETCHER and COURTNEY well knew, the actual purchase price to Individual A was approximately $315,000.

11.    It was further part of the scheme that on or about September 5, 2007, FLETCHER sent or caused to be sent by facsimile transmission to COURTNEY a signed real estate sales contract for FLETCHER's purchase of Unit C which, as FLETCHER well knew, falsely represented that FLETCHER had agreed to purchase Unit C for approximately $391,000 and that FLETCHER had paid Madava Inc. $39,000 as a down payment or earnest money and that FLETCHER intended to pay Madava Inc. an additional $39,000 as a down payment or earnest money.

12.    It was further part of the scheme that, in order to allow FLETCHER to obtain financing for the purchase of Unit C, COURTNEY directed another individual to prepare and to transmit to FLETCHER two letters of deposit, one dated June 29, 2007 and the other dated July 30, 2007, which purported to confirm that Madava Inc., through COURTNEY, had received two checks,

4

each in the amount of $39,000, and totaling $78,000, for the purchase of Unit C when, as COURTNEY and FLETCHER well knew, COURTNEY did not intend to receive $78,000 as a down payment or earnest money for the purchase of Unit C.

13.    It was further part of the scheme that FLETCHER transferred or caused to be transferred to COURTNEY two checks purportedly drawn on Chase Bank, one dated June 29, 2007 and the other dated July 30, 2007, each in the amount of $39,000, which purported to represent the down payment or earnest money by FLETCHER for the purchase of Unit C in University Townes when, as FLETCHER well knew, the two checks had not been validly issued by Chase Bank and COURTNEY did not intend to deposit the checks.

14.    It was further part of the scheme that FLETCHER caused a loan application to be submitted to Equity Mortgage Corporation in order to induce Equity Mortgage Corporation to approve a mortgage loan in the amount of approximately $311,814.37 for FLETCHER's purchase of Unit C. The loan application, as FLETCHER well knew, falsely represented that, among other things, there had been a $78,000 down payment made toward the purchase price of Unit C.

15.    It was further part of the scheme that FLETCHER caused to be submitted to Equity Mortgage Corporation a uniform residential loan application for the purchase of Unit C that misrepresented his income from Employer A, namely that FLETCHER earned $150,000 per year, when in fact FLETCHER earned $3000 from Employer A in 2007.

16.    It was further part of the scheme that on or about December 4, 2007, FLETCHER appeared at a closing to purchase Unit C from Madava Inc. The Department of Housing and Urban Development settlement statements associated with the purchase falsely represented that FLETCHER had deposited a down payment with Madava Inc. when, as FLETCHER and

5

COURTNEY well knew, the two $39,000 checks had not been deposited and COURTNEY had not received any earnest money or down payment for the purchase of Unit C. The closing documents also falsely represented the purchase price of Unit C to be approximately $391,000 when, as FLETCHER and COURTNEY well knew, the actual purchase price was approximately $315,000.

17.    It was further part of the scheme that ROBERT FLETCHER caused to be submitted to World Savings Bank and Equity Mortgage Corporation bank account records that had been falsified to show the transfer of funds to a JPMorgan Chase account to demonstrate the "source" of the funds used for the purported JPMorgan Chase down payment checks.

18.    On or about October 26, 2007 at Hickory Hills, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT FLETCHER and
MICHAEL COURTNEY,

defendants herein, and others, known and unknown to the Grand Jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from San Antonio, Texas to New York, New York, certain signs, sounds and signals, namely, a wire transfer of funds in the amount of approximately $312,967.40 for a mortgage loan to purchase Unit B in University Townes located at 6458 South Greenwood Avenue, Chicago, Illinois, which funds were deposited into Chicago Title and Trust Company's account at Bank of America, N.A., in New York, New York;

In violation of Title 18, United States Code, Sections 1343 and 2.

6

### COUNT TWO

The SPECIAL JUNE 2007 GRAND JURY further charges:

1.     The allegations in paragraphs 1 through 17 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2.     On or about December 4, 2007, at Hickory Hills, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROBERT FLETCHER and
MICHAEL COURTNEY,

defendants herein, and others known and unknown to the Grand Jury, for the purpose of executing the aforesaid scheme, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate commerce from Michigan City, Indiana to New York, New York, certain signs, sounds and signals, namely, a wire transfer of funds in the amount of approximately $309,589.42 for a mortgage loan to purchase Unit C in University Townes located at 6458 South Greenwood Avenue, Chicago, Illinois, which funds were deposited into Chicago Title and Trust Company's account at Bank of America, N.A., in New York, New York;

In violation of Title 18, United States Code, Sections 1343 and 2.

7

## COUNT THREE

The SPECIAL JUNE 2007 GRAND JURY further charges:

1.        Subparagraphs 1(a), (b), and (e) of Count 1 are hereby realleged and incorporated as if fully set forth herein.

2.        On or about September 7, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### ROBERT FLETCHER,

defendant herein, knowingly uttered and possessed a forged and counterfeit security of an organization, namely, counterfeit check number 183300495 payable to Madava Inc. in the amount of $39,000, which check purported to be drawn on an account at JP Morgan Chase Bank, with intent to deceive an organization, namely, World Savings Bank, which operated in and the activities of which affected interstate commerce;

In violation of Title 18, United States Code, Section 513(a).

8

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2007 GRAND JURY further charges:

1.        The allegations contained in Counts One and Two of this Indictment are realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.        As a result of his violations of Title 18, United States Code, Section 1343, as alleged in the foregoing indictment,

ROBERT FLETCHER,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section, 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all right, title and interest in property, real or personal, which constitutes and is derived from proceeds traceable to the charged offense.

3.        The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c) include but are not limited to real property known as 6458 S. Greenwood Avenue, Unit B, Chicago, Illinois, PIN number 20-23-106-079-0000.

4.        If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendants:

(a)        Cannot be located upon the exercise of due diligence;

(b)        Has been transferred or sold to, or deposited with, a third party;

(c)        Has been placed beyond the jurisdiction of the Court;

(d)        Has been substantially diminished in value; or

9

(e)    Has been commingled with other property which cannot be divided without
difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions

of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461( c).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY

10