IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | No. 07- CR-795 |
| | ) | Hon. Elaine Bucklo |
| v. | ) ) ) | |
| ROBERT A. FLETCHER and MICHAEL COURTNEY, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT FLETCHER'S MOTION FOR SEVERANCE**

Defendant Robert Fletcher ("Fletcher") respectfully requests pursuant to Fed. R. Crim. P. 14(a) that this Court enter an Order severing his trial from that of his co-defendant, Michael Courtney ("Courtney"), on the ground that mutually antagonistic defenses will be presented at the trial of this case such that Fletcher cannot receive a fair trial in a joint proceeding with Courtney and on the ground that the jury otherwise will be unable in a joint trial to make a reliable judgment with respect to Fletcher's guilt or innocence. In support of this Motion, Fletcher states as follows:

**BACKGROUND**

The government contends that the purchase of two town homes by Fletcher and Individual A from Madava, Inc., a corporation controlled by Courtney, was accomplished by fraud on the mortgage lenders that underwrote the purchase of the town homes, World Savings Bank (Unit B) and Equity Mortgage Corporation (Unit C). The government claims that Fletcher and Courtney "knowingly devised and participated in a scheme to defraud" the lenders and obtain

1

the mortgages that facilitated the purchase of the town homes by "materially false and fraudulent pretenses, representations, promises and omissions." Indictment, Count One, ¶ 2.

The heart of the government's case lies in the documents by which the purchases were accomplished. In particular, the government claims that the purchase contracts and related loan applications and closing documents for Units B and C state that the purchase price for each town home was approximately $390,000.00 and that the purchaser in each instance had made a $78,000.00 down payment toward the purchase of the property when in fact no such down payment was made in either instance and the real purchase price therefore was approximately $315,000.00. Indictment, Count One, ¶¶ 4-17. In addition, the government claims that, for each purchase, the purchaser's employment status and/or income were misrepresented in loan application documents. In particular, the government contends that the uniform residential loan application for Individual A's purchase of Unit B falsely stated that Individual A had earned $ 84,000.00 in salary from Employer A when in fact Individual A did not work there in 2007. Indictment, Count One, ¶ 9. And, the government contends, the uniform residential loan application for Fletcher's purchase of Unit C falsely stated that Fletcher had earned $150,000.00 from Employer A when in fact Fletcher had earned $3,000.00 in 2007. Indictment, Count One, ¶ 15. Finally, the government contends that, in connection with the alleged scheme to defraud the lenders, Fletcher transferred, or uttered and possessed, checks (or copies of checks) that purported to represent the $78,000.00 down payment for each of the Units and allegedly were drawn on Chase Bank but in fact had not been validly issued by Chase Bank or were forged and/or counterfeited. Indictment, Count One, ¶¶ 6, 13, Count Three.

Assuming that the government can prove a dichotomy between the statements and representations made in the purchase and loan documents on the one hand and the actual

underlying facts as reflected in other contemporaneous documents on the other, the question at trial likely will be who is responsible for the fact that the purchase and loan documents contained incorrect statements and representations. Courtney almost certainly will claim that he had no knowledge that any statements or representations in these documents were incorrect and that Fletcher, as the purchaser and loan applicant,[1] is responsible for any falsehoods. Fletcher, by contrast, may point to Courtney's role in documenting the purchase of the town homes and argue that any falsehoods are the fault of Courtney or persons acting (or ostensibly acting) under Courtney's control.[2]

Thus, this case presents the rare situation where co-defendants likely will present positions that are so antagonistic that acceptance of either (or at least one) co-defendant's defense by the jury almost certainly will preclude an acquittal for the other co-defendant. As explained more fully below, under such circumstances, the Court should, as Fletcher requests here, sever the co-defendant's cases for individual trial.

## ARGUMENT

While it is certainly true that "[t]he preference is for a joint trial of defendants who were indicted together," United States v. Carillo, 435 F.3d 767, 778 (7th Cir. 2006), "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P.

---

[1] Individual A is a person associated with Fletcher and the government contends in the Indictment that Fletcher is responsible for Individual A's purchase of Unit B and the documentation of that purchase. Indictment, Count One, ¶¶ 2-10.

[2] Of course, other defenses – a lack of misstatements or omissions, no materiality, no scheme, etc. – may be presented at trial.

14(a). In Carillo, the Seventh Circuit discussed the principles that govern the question whether to sever co-defendants who will present antagonistic defenses:

> The mere presentation of mutually antagonistic defenses does not require severance. In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all. Severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence….

Carillo, 435 F.3d at 778 (citations and quotations omitted). In United States v. Hartmann, 958 F.2d 774 (7th Cir. 1992), the Seventh Circuit described the "test for severance due to antagonistic defenses":

> Unless the defenses are so inconsistent that the making of a defense by one party will lead to an unjustifiable inference of another's guilt, or unless the acceptance of a defense precludes acquittal of other defendants, it is not necessary to hold separate trials.
>
> The latter ground mentioned in [the foregoing excerpt] has been referred to as the 'mutually antagonistic defenses' test. Mutual antagonism, as interpreted in the case law, implies a conflict in defenses that is irreconcilable and mutually exclusive. Put simply, defenses are not mutually antagonistic unless they are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty. This standard requires that acceptance of one defendant's defense will preclude the acquittal of the other defendant.

Hartmann, 958 F.2d at 786-87 (citations and quotations omitted); see also, Carillo, 435 F.3d at 778 ("Defenses are mutually antagonistic when acceptance of one defendant's defense will preclude the acquittal of the other defendant…."). Here, severance is warranted under either prong of the foregoing test, both of which fall, Fletcher respectfully submits, under the rubric of mutual antagonism. See, United States v. Mayfield, 189 F.3d 895 (9th Cir. 1999) (reversing conviction in part on the ground that a severance was incorrectly denied where codefendant presented "mutually exclusive" defense); United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir.

1991) (severance incorrectly denied where "the principle defense of each defendant was that the other alone committed the assaults"); United States v. Rucker, 915 F.2d 1511, 1513 (11th Cir. 1990)(Error to deny motion for severance where mutually antagonistic defenses presented: "We have two related co-defendants, one of whom owns the vehicle, both asserting their ignorance of the contraband, even though it was quite literally right under foot. No reasonable juror could believe *both* of their stories, for to do so would mean that the contraband had been placed there by some unknown third party, and that neither defendant had thought to investigate this mysterious parcel.") (emphasis in original); United States v. Romanello, 726 F.2d 173 (5th Cir. 1984) (Where defendants offered defense that they had not stolen gold but had innocently accepted job to drive it to New York and codefendant argued that defendants had robbed him at gunpoint, defense of codefendant was mutually exclusive or irreconcilable with defenses of defendants, mandating reversal of defendants' convictions.); United States v. Crawford, 581 F.2d 489 (5th Cir. 1978) (reversing conviction where co-defendants presented defenses at trial that were "irreconcilable as well as mutually exclusive").  Also, severance is warranted here because – the technical requirements of mutual antagonism aside -- there is a "serious risk" that a joint trial will "prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

  First, Courtney almost certainly will argue in any trial that any incorrect statements in either the purchase or the loan documents were the fault of Fletcher, the purchaser (or claimed purchaser).  Courtney may even claim that the allegedly forged checks were an effort to hoodwink him, the seller.  Thus, Courtney's likely trial defense almost certainly will raise an unfair inference of Fletcher's guilt.  In Mayfield, the court reversed a conviction in part on the ground that a severance was incorrectly denied in the face of exactly this sort of prejudice:

> Gilbert's mutually exclusive defense prevented the jury from making a reliable judgment about Mayfield's guilt. Mere inconsistency in defense positions is insufficient to warrant severance. However, the probability of reversible prejudice increases as the defenses move beyond the merely inconsistent to the antagonistic. When defendants present mutually exclusive defenses, the jury often cannot assess the guilt or innocence of the defendants on an individual and independent basis. Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant ... [c]ross examination of the government's witnesses becomes an opportunity to emphasize the exclusive guilt of the other defendant ... [c]losing arguments allow a final opening for codefendant's counsel to portray the other defendant as the sole perpetrator of the crime.
>
> In short, the situation envisioned by Tootick is precisely what happened here. Gilbert's counsel used every opportunity to introduce impermissible evidence against Mayfield, and her closing argument barely even addressed the government's evidence against her client and instead focused on convincing the jury that Mayfield was the guilty party, not her client.
>
> Gilbert's defense and Mayfield's defense were mutually exclusive because the core of the co-defendant's defense is so irreconcilable with the core of [Mayfield's] own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant.

Mayfield, 189 F.3d at 900 (citation and quotations omitted). A joint trial with Courtney presents Fletcher with the exact same prejudice faced by the defendant in Mayfield: like the co-defendant in Mayfield, Courtney likely will focus on convincing the jury that Fletcher is responsible for any incorrect statements or representations. Acceptance of such a defense by the jury likely will preclude an acquittal of Fletcher. Here, as in Mayfield, regardless of the defense presented by Fletcher, severance is warranted.

        <u>Second</u>, for his part, Fletcher may point, at least in part, to Courtney's role in documenting the purchase of the town homes and argue that any falsehoods that the government proves are (or may be) the fault of Courtney or persons acting (or possibly acting) under

Courtney's control.³  In Crawford, the court reversed a conviction in part on the ground that a severance was incorrectly denied in the face of exactly the sort of prejudice that would (or might) attend a trial here:

> This record discloses that the defenses asserted by Blanks and Crawford were irreconcilable as well as mutually exclusive.  The sole defense of each was the guilt of the other.  Blanks incriminated Crawford and exculpated himself at every opportunity.  Crawford, on the other hand, attempted to show that he was not culpable because Blanks alone had possession of the firearm.  Each was the government's best witness against the other.  Each defendant had to confront not only hostile witnesses presented by the government, but also hostile witnesses presented by his co-defendant.  Witnesses against each defendant were thus examined by one adversary and cross-examined by another adversary.  A fair trial was impossible under these inherently prejudicial conditions.

Crawford, 581 F.2d at 491-92.  Here, as in Crawford, Courtney and Fletcher are likely to (or may) present defenses that blame each other for any misstatements in the purchase or loan documents that the government is able to prove.  Accordingly, here, as in Crawford, severance is warranted.

Third, Zafiro v. United States, 506 U.S. 534 (1993), is not to the contrary.  In Zafiro, the Court considered the appeals of defendants who had been convicted of conspiring to possess drugs with intent to distribute.  Zafiro, 506 U.S at 536-37.  Each of the defendants had argued that he or she had no knowledge of a large amount of drugs recovered in an apartment where the defendants were arrested.  Id at 535-36.  Each of the defendants, to varying extents, implicated the other defendants.  Id at 536 (describing one defendant's argument that he was only visiting his girlfriend and "had no idea that she was involved in distributing drugs" and another defendant's argument as being that a box that contained drugs belonged to a co-defendant and he did not know its contents).  Three of the defendants argued that their convictions should be

---

³  Other persons in addition to Mr. Courtney were involved in the documentation of the loans and purchases and may bear responsibility for any incorrect statements.

reversed because the district court had erred in denying their motions for severance based on the presentation of mutually antagonistic defenses.  Id at 537.  In affirming the convictions and the denial of the severance motions, the Supreme Court held only that severance was not necessarily required in the case of antagonistic defenses and that district courts should exercise their discretion in considering whether severance is necessary in such circumstances:

> ….petitioners urge us to adopt a bright-line rule, mandating severance whenever codefendants have conflicting defenses.  We decline to do so.  Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.

Id at 538-39.  Thus, nothing in Zafiro prevents this Court from granting a severance here.  To the contrary, Zafiro recognizes that this Court has the discretion to grant a severance in this case.  It is certainly true that the Zafiro Court upheld the refusal of the district court to grant a severance in the specific case at issue there.  Id at 540-41.  But the Zafiro Court found no prejudice to the defendants in a joint trial on the facts before it.  Id.  As set forth above, that is not the case here.

Fourth, even if the technical requirements of mutual antagonism are not met, this Court still should exercise its discretion under Fed. R. Crim. P. 14(a) to order a severance because there is a "serious risk" that a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence" with respect to Fletcher.  Zafiro, 506 U.S. at 539.  As noted above, assuming that the government is able to prove that the purchase and/or loan documents set forth misrepresentations and that such misrepresentations were material, the question at trial almost certainly will be who is responsible for such misstatements, the purchaser (Fletcher) or the seller (Courtney).  In these circumstances, a joint trial almost certainly will pit one or both co-defendants against one another in addition to pitting both against the government such that a fair trial is, for the reasons set forth above, impossible – even if the technical requirements for

mutually antagonistic defenses are not met. This is particularly true in light of the fact that Courtney almost certainly will blame Fletcher for any alleged misstatements or omissions that the government is able to prove, thereby acting in effect as a second prosecutor and presenting a defense that, if accepted, likely precludes an acquittal for Fletcher. Under such circumstances, the jury will be unable to make "a reliable judgment about guilt or innocence" with respect to Fletcher's guilt and a severance is warranted.

## **CONCLUSION**

WHEREFORE, defendant Robert Fletcher respectfully requests pursuant to Fed. R. Crim. P. 14(a) that this Court enter an Order severing his trial from that of his co-defendant, Michael Courtney.

Date: April 21, 2008.                                                                 By: /s Timothy P. O'Connor


Timothy P. O'Connor
MEYER & O'CONNOR, LLC
Suite 2210
20 S. Clark Street
Chicago IL 60603
(312)-346-9000

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby states that he caused a copy of the foregoing

DEFENDANT FLETCHER'S MOTION FOR SEVERANCE to be served upon

Steven Bloch
Assistant United States Attorney
219 S. Dearborn
Chicago IL 60604

Terrence Gillespie
Genson & Gillespie
Suite 1420
53 W. Jackson Blvd.
Chicago IL 60604

Michael Clancy
Attorney At Law
Suite 1401
53 W. Jackson Blvd
Chicago IL 60603

by electronic service through the Court's ECF filing system on this 21st day of April, 2008.

/s Timothy P. O'Connor